UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIOLA J. HENLEY | CIVIL ACTION |
| VERSUS | No. 12-2687 |
| HOUSING AUTHORITY OF NEW ORLEANS | SECTION I |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendant, Housing Authority of New Orleans ("HANO").[1]  Plaintiff, Viola J. Henley ("Ms. Henley"), has filed a cross-motion for summary judgment.[2]  For the following reasons, defendant's motion for summary judgment is **GRANTED**.  Plaintiff's cross-motion for summary judgment is **DENIED**.

## *BACKGROUND*

Ms. Henley is a resident of New Orleans who has received rental assistance payments under the federal Housing Choice Voucher Program ("HCVP") since 2009.[3]  She has five adult children including her 43-year-old son, Mervell Henley ("Mervell"), who was convicted of a sex offense involving a juvenile in 1995.[4]  Ms. Henley alleges that Mervell rarely communicates with her because he is embarrassed by his conviction.[5]  She claims that he does not provide her with detailed information regarding his whereabouts.[6]  Ms. Henley further claims that she lives alone and that to the best of her knowledge Mervell was most recently living with a girlfriend.[7]

---

[1] R. Doc. No. 8.

[2] R. Doc. No. 9.

[3] R. Doc. No. 1, at ¶ 16.

[4] *Id.* at ¶¶ 1, 16-17; R. Doc. No. 8-4, at p. 2.

[5] R. Doc. No. 1, at ¶ 18.

[6] *Id.*

[7] R. Doc. No. 1, at ¶¶ 16-18.

On July 18, 2012, HANO began the process of terminating Ms. Henley's rental assistance on the ground that Mervell, an unapproved resident, was living in her unit.[8]   Although Ms. Henley argues that Mervell has not lived with her since her participation in the program,[9] she was informed by HANO that her participation in the HCVP was being terminated because "[a]ccording to the Dru Sjodin National Sex Offender Public website and the New Orleans Police Department website Offender Watch, Mervell Henley ha[d] listed [her] address which was last verified on 4/18/2012 as his residence."[10]   The notice also informed Ms. Henley that she had a right to appeal the termination by requesting an informal hearing.[11]

Ms. Henley appealed the proposed termination and an informal hearing was held before a hearing officer, Oliver Smith, III, on August 7, 2012.[12]   Ms. Henley's attorney argued that HANO could not meet its initial burden of proving that Mervell lived with Ms. Henley based solely on internet printouts from sex offender registry websites.[13]   Ms. Henley also personally testified that Mervell rarely visits her and that she last saw him about four months before the hearing.[14]   Ms. Henley's landlord further testified that she visited Ms. Henley's unit monthly and that she had never seen Mervell.[15]   Although Ms. Henley was afforded an opportunity to rebut

---

[8] *Id.* at ¶ 19-20.  HANO also proposed termination on the ground that Mervell's conviction violated the obligation to refrain from criminal activity.  However, this charge was later dismissed by the hearing officer and it is not relevant to the present matter.

[9] R. Doc. No. 1, at ¶ 17.

[10] R. Doc. No. 8-5, at p. 2.

[11] *Id.* at pp. 2-3.

[12] R. Doc. No. 8-8, at p. 2.  According to HANO, Oliver Smith, III is an attorney licensed to practice law in the State of Louisiana and he is one of two hearing officers employed by HANO.  R. Doc. No. 8-1, at p. 3.

[13] R. Doc. Nos. 8-9,  8-10.

[14] R. Doc. No. 8-10, at p. 3.

[15] *Id.*

HANO's evidence by coming forward with mail showing that Mervell did not live with her, the hearing officer noted that Ms. Henley's attorney merely "reiterated that [Ms. Henley] last saw him about four (4) months ago and it may not be possible" to come forward with the mail.[16]  The hearing officer subsequently upheld the termination, stating that he had "balanced the evidence HANO presented against [Ms. Henley's] testimony and [her attorney's] presentation and found that HANO met its burden."[17]

On August 24, 2012, Ms. Henley asked HANO to repudiate the hearing officer's decision on the ground that it was based solely on hearsay statements that were not corroborated by any evidence that Mervell actually lived in Ms. Henley's unit.[18]  Ms. Henley also provided HANO with additional evidence in the form of a residential lease agreement signed by Mervell for the twelve month period beginning on July 20, 2011, and terminating on July 20, 2012.[19]  However, HANO declined to repudiate the hearing officer's decision, stating that "the records of the Louisiana State Sex Offender Registry are more competent and reliable than the statements presented at the hearing by Ms. Henley."[20]  HANO explained that its decision was based on the fact that the information contained in the sex offender registry must be verified in accordance with state law through various methods and that Mervell could not "just 'use' his mother's

---

[16] *Id.*

[17] *Id.*

[18] R. Doc. No. 8-11.

[19] R. Doc. No. 8-12.

[20] R. Doc. No. 8-13.

address."[21]   HANO also noted that it would be illegal for an offender or an adult member of the offender's household to provide false information about an offender's address.[22]

On November 5, 2012, Ms. Henley filed this lawsuit alleging that HANO unlawfully terminated her rental assistance payments in violation of the 14th Amendment of the United States Constitution, the United States Housing Act, and the local housing authority's administrative plan.[23]   Ms. Henley argues that HANO could not rely on the uncorroborated hearsay statements presented in the sex offender registries to carry its burden of proving that she violated program requirements.[24]   HANO responds that the information presented on the sex offender registries contains sufficient indicia of reliability and probative value to support a termination decision at an informal administrative hearing.[25]   Both parties agree that the claims raise an issue of law and that summary judgment is appropriate.[26]

## *STANDARD OF LAW*

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56.  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need

---

[21] *Id.*

[22] *Id.*

[23] R. Doc. No. 1.

[24] *Id.*; R. Doc. No. 9.

[25] R. Doc. No. 8.

[26] R. Doc. Nos. 11, 12, 13.

not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.* at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## *DISCUSSION*

Ms. Henley alleges in her complaint that HANO's termination decision violated her right to a fair grievance procedure secured by the 14th Amendment, the U.S. Housing Act, and HANO's administrative plan. In *Goldberg v. Kelly*, the U.S. Supreme Court held that certain recipients of public assistance benefits must be afforded an evidentiary hearing with minimum procedural protections before their benefits may be terminated in a manner that is consistent with the 14th Amendment. 397 U.S. 254 (1970). "*Goldberg* places five requirements on the

termination process employed by a housing authority: (1) timely notice from the housing authority stating the basis for the proposed termination, (2) an opportunity by the tenant to confront and cross-examine each witness relied on by the housing authority, (3) the right of the tenant to be represented by counsel, (4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth, and (5) an impartial decision maker." *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996).  "[C]ourts have uniformly recognized that [these] due process requirements apply in the context of subsidized housing benefits." *Anderson v. Lowell Hous. Auth.*, No. 11–10580, 2012 WL 3965112, at * 10 (D. Mass. Aug. 24, 2012); *see also Basco v. Machin*, 514 F.3d 1177, 1182 n.7 (11th Cir. 2008).

The U.S. Housing Act similarly provides that the U.S. Department of Housing and Urban Development ("HUD") shall establish regulations requiring each public housing agency ("PHA") to afford minimum procedural safeguards.  Indeed, as one court has noted, "[t]he United States Housing Act essentially codifies [the Supreme Court's] criteria for hearings with respect to low-income housing benefits." *Anderson*, 2012 WL 3965112, at * 10.  Specifically, the U.S. Housing Act provides that HUD shall establish regulations requiring that PHAs adopt administrative grievance procedures under which tenants will

> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
>
> (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (l) of this section;
>
> (3) have an opportunity to examine any documents or records or regulations related to the proposed action;
>
> (4) be entitled to be represented by another person of their choice at any hearing;
>
> (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and

(6) be entitled to receive a written decision by the public housing
agency on the proposed action.

42 U.S.C. § 1437d(k).

The relevant HUD regulations provide, among other things, that both "[t]he PHA and the family must be given the opportunity to present evidence, and may question any witnesses."  24 C.F.R.  §  982.555(e)(5).  However, the regulations also provide that "[e]vidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." *Id.*  The regulations further provide that after the hearing, "[f]actual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555 (e)(6).

In accordance with the U.S. Housing Act and its implementing regulations, HANO's administrative plan details the specific procedures governing the informal administrative hearings in which a participant's eligibility for HCVP assistance may be challenged.  The plan provides that "HANO will use the concept of preponderance of the evidence as the standard for making all termination decisions." R. Doc. No. 1, at ¶ 54 (quoting HANO Admin. Plan, Chapter 19: Termination of Assistance and Tenancy, Page 163 (Effective October 1, 2011), *available at* www.hano.org/home/agency_plans/HCVP_Admin_Plan.pdf.). The term "preponderance of the evidence" is defined in the plan as

> evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not. Preponderance of the evidence may not be determined by the number of witnesses, but by the greater weight of all evidence.

*Id.*  The plan further states that "HANO will terminate assistance if a preponderance of the evidence indicates that a household member has engaged in the activity, regardless of whether the household member has been arrested or convicted." *Id.*

7

The parties have framed the dispositive legal question underlying Ms. Henley's constitutional, statutory, and administrative claims as whether HANO could meet its burden of proving a violation of the HCVP rules based solely on the hearsay statements found on the Dru Sjodin National Sex Offender Public Website and the NOPD sex offender registry website.  Ms. Henley argues that she was deprived of a fair hearing because the hearsay statements contained in the sex offender registries are not sufficiently reliable to support an administrative decision. HANO responds that the legal requirements for sex offender registration assure the reliability of the hearsay contained in the sex offender registries.

The U.S. Court of Appeals for the Eleventh Circuit has stated that "[a]lthough the rules of evidence are not strictly applied in administrative hearings, there are due process limits on the extent to which an adverse administrative determination may be based on hearsay evidence." *Basco*, 514 F.3d at 1182; *see also Clark*, 85 F.3d at 151-52 ("[T]o insure compliance with federal law, the reviewing court must be satisfied that the hearing officer's conclusions are supported by substantial evidence.").  "[H]earsay may constitute substantial evidence in administrative proceedings as long as factors that assure the 'underlying reliability and probative value' of the evidence are present." *Id.* (quoting *U.S. Pipe and Foundry Co. v. Webb*, 595 F.2d 264, 270 (5th Cir. 1979)).  These factors include whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable.  *Basco*, 514 F.3d at 1182.

The reliability and probative value of the hearsay supporting HANO's termination decision must be examined in light of the stringent legal requirements for sex offender

registration in the State of Louisiana.  Sex offenders in Louisiana are required by law to register

their physical address or addresses of residence with the appropriate law enforcement agencies.

La. Rev. Stat. Ann. § 15:542(C)(1).   The offender must provide "[t]wo forms of proof of

residence for each residential address provided, including but not limited to a driver's license,

bill for utility service, and bill for telephone service." La. Rev. Stat. Ann. § 15:542(C)(1)(e).

Alternatively, "[i]f those forms of proof of residence are not available, the offender may provide

an affidavit of an adult resident living at the same address." *Id.*  If an affidavit is submitted, the

affiant must certify that he "understands his obligation to provide written notice . . . to the

appropriate law enforcement agency with whom the offender last registered when the offender

no longer resides at the residence provided in the affidavit." *Id.*  "A person who fails to register,

periodically renew and update registration, provide proof of residence or notification of change

of address or other registration information," or a person "who knowingly provides false

information to a law enforcement agency [required to receive registration information]" is

subject to a one thousand dollar fine and a term of imprisonment with hard labor "for not less

than two years nor more than ten years without benefit of parole, probation, or suspension of

sentence." La. Rev. Stat. Ann. § 15:542.1.4(A)(1).

When considered in light of these requirements and the particular circumstances of this

case, the Court agrees with HANO that each of the factors assuring the underlying reliability and

probative value of the information in the sex offender registries are present.  Plaintiff concedes

that the first factor is satisfied as there is no indication that Mervell harbored any bias either for

or against her when he registered at her address.  Mervell's interest in making the statements

related to his registration duties rather than to his mother's eligibly for rental assistance. Any

possibility that he may have had other unknown reasons to falsify his registration information is

tempered by the severe criminal penalties that attach for knowingly providing false registration information.

As for the second factor, Ms. Henley could have obtained the information contained in the hearsay before the hearing.  The hearing officer afforded Ms. Henley the opportunity to come forward with mail or other hearsay evidence of her own showing that Mervell did not reside at her address.  Ms. Henley eventually came forward with a lease agreement signed by Mervell tending to show that he did not reside with her.  Ms. Henley also could have contacted the probation and parole officer at the telephone number listed on the sex offender registry to confirm Mervell's address or to obtain copies of the documents used by Mervell to prove his residence during the registration process.[27]   Although Ms. Henley did not have the power to compel Mervell's testimony in order to cross examine him with respect to the information relied upon by the hearing officer, the Fifth Circuit has not held that the subpoena power is a sacred requirement of the reliability inquiry.[28]  *See, e.g.*, *Sch. Bd. of Broward Cnty., Fl. v. Dep't of Health, Ed. & Welfare*, 525 F.2d 900, 907 (5th Cir. 1976) ("The inability to procure direct testimony, although it does not increase the probative force of the hearsay introduced, does demand that we be more flexible by allowing an administrative determination to rest on the only available evidence.").

---

[27] Notwithstanding the fact that HANO had the burden of proof, the fact that such information was available to Ms. Henley supports the reliability of the hearsay by providing a basis upon which its substance could have been tested at the hearing  *Cf. Sanders v. Sellers-Earnest*, 768 F. Supp. 2d 1180, 1187 (M.D. Fla. 2010) (noting that a hearsay statement in a police report was not sufficiently reliable, in part, because it could not have been tested).

[28] The parties have not raised the related question of whether Ms. Henley's right to confront adverse witnesses includes an automatic right to cross examine hearsay declarants who were not called as witnesses.  In the context of this case, that argument, even if made, is rejected.  *See Costa v. Fall River Hous. Auth.*, 903 N.E. 2d 1098, 1109-1111 (Mass. 2009); *see also Robinson v. D.C. Hous. Auth.*, 660 F. Supp. 2d 6 (D.D.C. 2009); *Tomlinson v. Machin*, No. 05-1880, 2007 WL 141192 (M.D. Fla. Jan. 16, 2007); *Lane v. Fort Walton Beach Hous. Auth.*, No. 11-374, 2011 WL 5826040 (N.D. Fla. Nov. 18, 2011).  *But see Woods v. Willis*, No. 11-4419, 2013 WL 611141, at *11 (6th Cir. Feb. 19, 2013) (explaining that "[l]ower federal courts and state courts come down on both sides of this issue.").

As for the remaining factors, the parties agree that there was no inconsistency on the face of the reports, but they dispute whether the information has been recognized by courts as inherently reliable.  Clearly, information provided for sex offender registries does not enjoy the long history of recognition afforded to other kinds of reports such as medical opinions.  *See, e.g.*, *Richardson v. Perales*, 402 U.S. 389, 402-06 (1971) (recognizing that written medical reports have long been recognized as inherently reliable). The absence of such history, however, is outweighed by the substantial indicia of reliability stemming from the statutory registration requirements which demand corroboration in the form of objective proof and/or an affidavit by a third party along with severe criminal penalties for misreporting information.

This Court's conclusion finds support from the only other federal court that has considered the reliability of hearsay statements contained in a sex offender registry.  In *Lane v. Fort Walton Beach Housing Authority*, No. 11-374, 2011 WL 5826040, *5 (N.D. Fla. Nov. 18, 2011), the U.S. District Court for the Northern District of Florida upheld the termination of a tenant's housing assistance based, at least in part, on the fact that a non-resident had registered as a sex offender at the tenant's address.[29]   The court held that a printout from Florida's sex offender registry website and its contents were hearsay, but that they had "sufficient indicia of reliability to be considered by the Hearing Officer in formulating his determination." The court explained that the information's reliability was established primarily by the fact that it is a third degree felony under Florida law for sex offenders to misreport the address of their residence.

The sex offender registration laws in this case provide similar criminal penalties for intentionally falsifying registration information.[30] As HANO notes, however, they provide even

---

[29] The hearing officer in *Lane* also considered other evidence in addition to the hearsay in the sex offender registry.

[30] A person who has been convicted of a third degree felony under Florida law is subject to a term of imprisonment not exceeding 5 years. Fla. Stat. § 775.082(3)(d).  As stated above, La. Rev. Stat. Ann. § 15:542.1.4(A)(1) provides

greater indicia of reliability because they require that the registering offender provide "[t]wo forms of proof of residence" or an "affidavit of an adult resident living at the same address." *See* La. Rev. Stat. Ann. § 15:542(C)(1)(e).   These requirements also ensure a greater degree of reliability and probative force than the uncorroborated hearsay statements that were rejected in the cases relied upon by plaintiff.  *See, e.g.*, *Ervin v. Hous. Auth. of Birmingham Dist.*, 281 F. App'x 938, 940 (11th Cir. 2008), *on remand*, 2008 WL 8225330 (N.D. Ala. July 30, 2008) ("[T]he sole evidence . . . was the statement of an attorney for HABD that [the information] was what a 'Ms. Jackson' from the Birmingham Police Department told her over the phone."); *Sanders v. Sellers-Earnest*, 768 F. Supp. 2d 1180 (M.D. Fla. 2010) (termination based on hearsay statements in police reports); *Edgecomb v. Hous. Auth. of Town of Vernon*,  824 F. Supp. 312 (D. Conn. 1993) (termination based on hearsay found in newspaper articles and undercover police operations).   In particular, the hearsay statements in those cases did not enjoy the additional support of a legal obligation to submit objective proof confirming the matter asserted along with criminal penalties attaching for false statements.

In summary, the statutory registration requirements taken together with the particular circumstances of this case sufficiently demonstrate the presence of factors assuring the underlying reliability and probative value of the information presented on the Dru Sjodin and NOPD sex offender registry websites.   The substantial indicia of reliability underlying the information contained in the sex offender registries permitted HANO to base its termination decision on their contents.   Accordingly, HANO is entitled to summary judgment with respect to

---

that "[a] person who fails to register, periodically renew and update registration, provide proof of residence or notification of change of address or other registration information . . . and a person who knowingly provides false information to a law enforcement agency [required to receive registration information]" is subject to a one thousand dollar fine and a term of imprisonment with hard labor "for not less than two years nor more than ten years without benefit of parole, probation, or suspension of sentence."

plaintiff's claims that she was denied due process in violation of the U.S. Constitution, the U.S. Housing Act, and HANO's administrative plan.

### *CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**. Plaintiff's cross-motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that the above-captioned matter is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, May 1, 2013.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**