UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIOLA J. HENLEY, | *   CIVIL ACTION |
|  | *   NO. 12-cv-02687-LMA-JCW |
| Plaintiff | * |
| VS. | * |
|  | *   JUDGE LANCE M. AFRICK |
| HOUSING AUTHORITY OF NEW ORLEANS, | * |
|  | *   MAGISTRATE JOSEPH C. WILKINSON, JR. |
| Defendant | * |

*******************************************

## Memorandum in Support of Plaintiff's Motion for New Trial

### Facts

The Court is already familiar with the facts.  The plaintiff Viola Henley is a 63-year-old widow who, until the events at issue, received assistance through the federal Housing Choice Voucher Program, often referred to as "Section 8 assistance."  Her son Mervell Henley, who is in his 40s, was convicted of Molestation of a Juvenile in the 1990s, served time, and is now required to register with the sex offender registry.

On July 18, 2012, the defendant Housing Authority of New Orleans (HANO) proposed to terminate Ms. Henley's rental assistance based on an unauthorized individual residing with her, presuming that Mervell Henley lives with her because he had listed her address as his on the sex offender registry.

At the hearing on the termination, HANO's only support for the allegation that the son resided with Ms. Henley were internet printouts from sex offender registries.  Ms. Henley testified at the hearing that her son does not live on the premises, and that she rarely sees him; she was unaware of his whereabouts and was unable to contact him for

proof of his residency from the time she received notice of proposed termination to the time of the hearing. Ms. Henley's landlord, who is also an occasional visitor, testified that she had never seen Mervell Henley on the premises. HANO presented no evidence that anyone had even seen the son at the mother's residence.

HANO upheld the termination of rental assistance, based solely on the sex offender registry listing.

On May 1, 2013, this Court granted HANO's motion for summary judgment and denied Ms. Henley's cross-motion for summary judgment. As stated in the Order and Reasons, the dispositive legal question is "whether HANO could meet its burden of proving a violation of the HCVP rules based solely on the hearsay statements found on the Dru Sjodin National Sex Offender Public Website and the NOPD sex offender registry website."[1]

## Argument

Plaintiff now seeks rehearing because the Court misinterpreted *School Board of Broward County v. Department of Health, Education & Welfare,*[2] a Fifth Circuit precedent. The Court suggested that the case allows the use of hearsay to meet the burden of proof in an administrative proceeding, even though subpoena power is not available in the proceeding. But the Fifth Circuit opinion was clear that this was allowed *because there was no contradictory evidence*, a factor not present in Ms. Henley's case.

Further, a case the Court relied on, *Lane v. Fort Walton Beach Housing Authority,*[3] has been reversed by the Eleventh Circuit since the issuance of this Court's May 1 decision.

---

[1] Rec. Doc. 18, p. 8.
[2] 525 F.2d 900 (5th Cir. 1976).
[3] 2011 WL 5826040 (N.D.Fla. Nov 18, 2011) (NO. 3-11-CV-374/RS-CJK), *reversed* 2013 WL 2150922 (11th Cir. May 20, 2013).

2

**The *Lane v. Fort Walton Beach Housing Authority* case has been reversed since this court's May 1 decision relied on it.**

This Court's ruling followed the sole case on point, *Lane v. Fort Walton Beach Housing Authority*, 2011 WL 5826040 (N.D.Fla. Nov 18, 2011) (NO. 3-11-CV-374/RS-CJK), which relied on a sex offender registry to uphold termination of a tenant's housing assistance.  Order and Reasons, Rec. Doc. 18, p. 11.  In *Lane*, there was additional evidence besides the registry, in that the sex offender had been successfully contacted through the address at issue.[4]

The *Lane* case has since been reversed.[5]  The panel did not explicitly reach the hearsay issue, holding instead that the documents submitted failed to establish, even if true, that the sex offender lived in the apartment for more than 14 days, as would be required to make him an unauthorized individual.[6]

**This Court misapplied the *School Board of Broward County* precedent with regard to Ms. Henley's inability to subpoena the declarant.**

More importantly, the second of four factors that hearsay must meet to be relied on by agencies, under *School Bd. of Broward County v. Department of Health, Education and Welfare,*[7] is that "the reports were available prior to the hearing, **and** the claimant could have subpoenaed the out-of-court declarants."  ***Since subpoenas were not available, on its face this requirement clearly is not met.***

There is no factual dispute.  Ms. Henley could not have subpoenaed either Mervell Henley or the NOPD.  The son committed a crime in falsely listing his residence with the

---

[4] 2011 WL 5826040 *4, 5 (N.D.Fla. Nov 18, 2011) (NO. 3-11-CV-374/RS-CJK), reversed 2013 WL 2150922 (11th Cir. May 20, 2013).
[5] *Lane v. Fort Walton Beach Housing Authority*, 2013 WL 2150922 (11th Cir. May 20, 2013).
[6] *Id.* at *7.
[7] 525 F.2d 900, 906 (5th Cir. 1976)(emphasis added).

3

registry, so cannot be expected to come forth and voluntarily admit to that. The NOPD may not have checked the verification it is supposed to check before taking the address for the sex offender registry. So it would have been important to determine the basis for its listing.

Even though the subpoena requirement was not met, the Court considered it academic, with the following reasoning regarding this factor at page 10 of its opinion:

> As for the second factor, Ms. Henley could have obtained the information contained in the hearsay before the hearing. The hearing officer afforded Ms. Henley the opportunity to come forward with mail or other hearsay evidence of her own showing that Mervell did not reside at her address. Ms. Henley eventually came forward with a lease agreement signed by Mervell tending to show that he did not reside with her. Ms. Henley also could have contacted the probation and parole officer at the telephone number listed on the sex offender registry to confirm Mervell's address or to obtain copies of the documents used by Mervell to prove his residence during the registration process.[27] Although Ms. Henley did not have the power to compel Mervell's testimony in order to cross examine him with respect to the information relied upon by the hearing officer, the Fifth Circuit has not held that the subpoena power is a sacred requirement of the reliability inquiry.[28] *See, e.g.*, *Sch. Bd. of Broward Cnty., Fl. v. Dep't of Health, Ed. & Welfare*, 525 F.2d 900, 907 (5th Cir. 1976) ("The inability to procure direct testimony, although it does not increase the probative force of the hearsay introduced, does demand that we be more flexible by allowing an administrative determination to rest on the only available evidence.").
>
> [27] Notwithstanding the fact that HANO had the burden of proof, the fact that such information was available to Ms. Henley supports the reliability of the hearsay by providing a basis upon which its substance could have been tested at the hearing *Cf. Sanders v. Sellers-Earnest*, 768 F. Supp. 2d 1180, 1187 (M.D. Fla. 2010) (noting that a hearsay statement in a police report was not sufficiently reliable, in part, because it could not have been tested).
> [28] The parties have not raised the related question of whether Ms. Henley's right to confront adverse witnesses includes an automatic right to cross examine hearsay declarants who were not called as witnesses. In the context of this case, that argument, even if made, is rejected. *See Costa v. Fall River Hous. Auth.*, 903 N.E. 2d 1098, 1109-1111 (Mass. 2009); *see also Robinson v. D.C. Hous. Auth.*, 660 F. Supp. 2d 6 (D.D.C. 2009); *Tomlinson v. Machin*, No. 05-1880, 2007 WL 141192 (M.D. Fla. Jan. 16, 2007); *Lane v. Fort Walton Beach Hous. Auth.*, No. 11-374, 2011 WL 5826040 (N.D. Fla. Nov. 18, 2011). *But see Woods v. Willis*, No. 11-4419, 2013 WL 611141, at *11 (6th Cir. Feb. 19, 2013) (explaining that "[l]ower federal courts and state courts come down on both sides of this issue.").

This Court's statement that "the Fifth Circuit has not held that the subpoena power is a sacred requirement of the reliability inquiry" mischaracterizes the Fifth Circuit case it

4

cites.  In *School Board of Broward County v. Department of Health, Education & Welfare,* the Fifth Circuit found it acceptable to rely on hearsay evidence offered by the federal Department of Health, Education, and Welfare, as to discrimination by schools at issue because "[t]he hearsay evidence utilized **was uncontradicted by the school board.**"[8]  "We find that the absence of contradictory evidence in the present record goes far towards supporting a finding that the hearsay constitutes substantial evidence."[9]

Here, the hearsay evidence *was* contradicted with competent evidence, an important factor noted by the Fifth Circuit not to be present in that case.  As a result, to determine the truth it became important to be able to test the basis of the hearsay evidence, something that was not possible, given the absence of subpoena power.

Subpoena power was also crucial in the Supreme Court's *Richardson v. Perales*[10] case:

> The matter comes down to the question of the procedure's integrity and **fundamental fairness**.  We see nothing that works in derogation of that integrity and of that fairness in the admission of consultants' reports, **subject as they are to** being material and to **the use of the subpoena and consequent cross-examination.**

Recognizing the importance of the right to subpoena, the Fifth Circuit has held that *Richardson v. Perales* **required reversing** a Social Security decision where the agency had denied a subpoena the claimant requested to cross-examine the source of the hearsay medical records that were being used as the basis for decision.  *Lidy v. Sullivan,* 911 F.2d 1075 (5th Cir. 1990).  So the subpoena power was determinative even though the medical records passed all other hurdles set out by the Supreme Court in *Richardson v. Perales,*

---

[8] 525 F.2d at 907 (emphasis added).
[9] *Id.*
[10] 402 U.S. 389, 410 (1971)(emphasis added).

5

since they were the same type of records as at issue in that case.

The above passage from this Court's Order and Reasons presumes Ms. Henley could obtain any underlying documents in support of the registry listing for use at her hearing. ***That is a premise not supported by evidence.*** Plaintiff had suggested that if the case were not decided in response to HANO's quick motion for summary judgment, discovery could determine what records the NOPD had and keeps.[11]  In the meantime, it has been determined that whatever NOPD has, it does not voluntarily turn over. *See* Affidavit of Lauren E. Duxstad, submitted as an Exhibit in support of this motion.

The inability to subpoena or otherwise determine the basis for the listing (whether it had any basis other than the word of the ex-offender) undermines all ability to test the so-called evidence offered against Ms. Henley. Ms. Henley directly contradicted the hearsay through her and her landlord's competent testimony. Yet the Court would allow competent evidence to be outweighed by the hearsay that Ms. Henley has no means to challenge.[12]

Here, the Court stated, "The hearing officer afforded Ms. Henley the opportunity to come forward with mail or other hearsay evidence of her own showing that Mervell did not reside at the address." Rec. Doc. 18, p. 10. But without knowing where her son resided, that supposed option offers nothing.

In *Cuellar v. Texas Employment Commission*,[13] the Fifth Circuit rejected the opportunity to respond, as inadequate to substitute for subpoena power. "The critical question… is whether the plaintiff is afforded a viable opportunity to confront the witnesses against him-***not just to anticipate or to respond*** to the substance of their

---

[11] Rec. Doc. 9-2, p. 11.
[12]
[13] 825 F.2d 930, 938 (5th Cir. 1987)(emphasis added).

6

testimony-or has been denied the opportunity to cross-examine such witnesses." In *Cuellar*, the lack of an opportunity to subpoena the source of the evidence led the Circuit to allow a due process challenge to move forward.[14]

Without the ability to compel the production of information about the reports, Ms. Henley was left with ineffective procedures for proving the lack of veracity of the listing. ***If Ms. Henley has been the victim of her son's deceitful and inaccurate filing because he does not want to alert his neighbors at his true residence to the fact that they are living next to a convicted sex offender, how does anything short of the power to subpoena the source of the evidence against her allow her vindication?***

The Court's assumption that truth can be vindicated without subpoena power is an unestablished assumption, with no supporting evidence, and so not a proper basis for summary judgment.

**Sex offender registries do not have "an inherent reliability and probative worth long recognized by the courts."**

Though sex offender registries also fail the *School Board of Broward County* test requiring that the information, "have an inherent reliability and probative worth long recognized by the courts"[15] the Court gave HANO a pass on this issue, too. The Court noted that there are criminal penalties for mis-reporting to the registry and that a statute requires that address placed on the registries be verified.[16]

The Court appears to make a factual assumption that the duty to verify makes the registries so accurate that they can be accepted despite not being "traditionally recognized" by the courts. (Given the reversal of *Lane,* this Court will be the first to "recognize" them.)

---

[14] 825 F.2d. at 940.
[15] 525 F.2d 900, 906 (5th Cir. 1976).
[16] Order and Reasons at 12-13.

7

This factual assumption is not supported by any record evidence. Further, plaintiff previously noted that a legal requirement (that law enforcement officers are to require corroboration) should not create a presumption of legal compliance.[17]

In addition, the Justice Department has "found that information in the national sex offender registries is incomplete and inaccurate and therefore the registries are **not reliable tools for law enforcement and the public**."[18] More specifically, 26 of 27 audits found "Non-compliance with the validation policy (i.e., the agency that entered the record did not ensure it was complete, accurate, and still active)," and inaccurate record information in 25 of 27 audits.[19] Plaintiff's original memorandum cited six cases in which courts found sex offenders to have inaccurately listed with registries.[20] This is not surprising since all of the individuals are previous law breakers. The existence of criminal penalties does not mean there will be no violations. If it did, America would have no drug problem.

## Conclusion

The Court should reconsider its decision, recognizing that the plaintiff had no fair chance to challenge the hearsay offered against her, if in fact it was false, given the absence of subpoena power.

Imagine this: Ms. Henley's son lied about his residence to avoid upsetting his neighbors or landlord, by alerting them to his sex offender status.

Under this Court's prior decision does Ms. Henley have a realistic chance to prove

---

[17] Rec. Doc. 9-2, at 10-11.
[18] The United States Department of Justice, Office of Inspector General Evaluation and Inspections Division: Review of the Department of Justice's Implementation of the Sex Offender Registration and Notification Act, I-2009-001 (Dec. 2008), available at www.justice.gov/oig/reports/plus/e0901/final.pdf at p. iii (emphasis added).
[19] *Id.* at 46.
[20] Rec. Doc. 9-2, p. 10, n. 6

8

his listing wrong, given her and her landlord's direct evidence is not accepted?

          Respectfully submitted,

          SOUTHEAST LOUISIANA LEGAL SERVICES

          By:  /s/David Williams
          David H. Williams, Bar No. 17867 (T.A.)
          1010 Common Street, Suite 1400A
          New Orleans, Louisiana 70112
          Telephone: (504) 529-1063
          dwilliams@slls.org
          Fax: (504) 596-2241

          Attorneys for Plaintiff